WINIFRED, The. See Case No. 6,451.

WINIFRED, The. See Case No. 12,261.

## Case No. 17,874.

WININDGER et al. v. GLOBE MUT. LIFE. INS. CO.

[3 Hughes, 257.] [1]

Circuit Court, E. D. Virginia. Nov. 14, 1878.

INSURANCE—NONPAYMENT OF PREMIUM—LAPSE OF POLICY.

The failure to pay an installment of premium of insurance in advance when due, causes a lapse of the policy, unless the agent of the company by indulgence creates the belief in the insurer that he is treating the installment as if it had been actually paid.

The case was brought first in the corporation court of Norfolk, and was removed thence into the United States circuit court.

The facts as given in evidence were, substantially, that although the policy called for the prepayment each year of annual premiums, yet that these were changed subsequently into quarterly instalments, payable at the beginning of each quarter-year, on what are called renewal receipts, the effect of which was to extend the policy for each three months on payment of the quarterly payment in advance. The payment by Winindger of these quarterly instalments of the premiums had been very irregularly made, rarely before near the end of each quarter instead of the beginning. These payments had been made partly in butcher's meat and partly in small amounts of cash to Mr. E. J. Griffith, the insurance agent of the defendant in this city. Mr. Griffith had been exceedingly indulgent to Winindger in respect to the forfeiture of the policy, keeping it alive by dealings, by accepting small sums at a time, and by taking due-bills for balances. The instalment due the 10th October was probably never paid, but Winindger relied upon Mr. Griffith's keeping his policy alive as usual, probably thinking his butcher's account had partly paid the quarter's premium, and that a sum of eight dollars in money sent by his clerk would be credited to the premium. At all events, Winindger was confident throughout his last illness that his policy was alive, and this as late as the first day of January, which was two or three days before his death. Nevertheless, on or about that day he sent out his brother with the money to pay the October instalment. His brother called on Mr. Griffith at once and offered to pay the instalment, but Mr. Griffith stated that he had returned to the insurance company in New York the renewal receipts for the October instalment, and could not now receive the money, especially inasmuch as Winindger was now seriously ill, and that the policy was forfeited. On this state of facts, given in evidence to the jury, counsel on each side asked the court for instructions to the jury covering their respective views of the law, and submitted learned arguments in support of them.

White & Garnett, for plaintiff.
Baker & Walke, for defendant.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

HUGHES, District Judge, declined to give any of these instructions in the form in which they were asked for. He said:

A policy of insurance could only be kept alive in general by the payment in advance, at the beginning of each year insured for, of the annual premium. That the payment in advance of the premium was an essential element of an insurance contract. That on a failure to make this payment at the beginning of any year, the policy lapsed by its very terms. That the policy now sued upon provided that it might be renewed after default, if the premium should be paid within thirty days after the beginning of each year. But it must be borne in mind that the policy lapsed at the beginning of the new year, after default, and that payment within thirty days but renewed what had expired. The agreement in this case to accept quarterly instalments only changed the times and amounts of the payments, not the nature of the transaction. If the annual payment was not made by the beginning of each new year the policy lapsed. The payment in advance of a quarterly instalment of this premium only operated to revive and renew for the ensuing three months what had lapsed and expired. If, therefore, any quarterly payment was shown not to have been made, then the policy had not been revived, had not been renewed, and there could be no recovery.

The judge then instructed the jury as follows: "There are two questions upon which the jury are to pass in this trial, namely: First, whether the premium due the 10th October, 1877, was paid; and, if it was not paid, second, whether Winindger's neglect and failure to pay it before his mortal illness was caused by the defendant. or its agent, Mr. Griffith, inducing him to believe that he might neglect to do so to the extent that he actually did neglect it, without losing the benefit of his policy. The court accordingly gives the following instructions: 1st. If the jury believe, from the evidence, that Winindger did not pay the October quarterly instalment of the premium. then they must find for the defendant; unless, 2nd. They believe, from the evidence, that Winindger's neglect to pay it was induced by the conduct of the defendant or Mr. Griffith; and if they believe that his failure to pay was so induced, they must find for the plaintiff. 3rd. The court also instructs the jury that a tender of a past-due premium for or by the insured during his mortal illness, does not of itself save a policy otherwise forfeited."

The jury then retired to their room, and after a deliberation of about twenty minutes brought in the following verdict: "We the jury find for the plaintiffs, and assess their damages at $2,000, with interest thereupon at six per cent. from April 13th, 1878."

Mr. Walke entered a motion to set aside the verdict as contrary to the law and the evidence, and both counsel agreed to submit the motion to the court without argument. The court accordingly took the motion under advisement.

On a later day in the term the verdict was set aside, and a new trial ordered. The case was afterwards compromised.